## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENERAL NUTRITION CORPORATION, 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222,         Plaintiffs,<br><br>    v.<br><br>CHOUDHRY S. JAVAID AND GULMEENA JAVAID, 4 Sullivan Avenue, Port Jefferson, NY 11776; KELLY WONG AND HONG BIN GUAN, 93 Miller Boulevard, Syosset, NY 11791; AHMAD FAYAZ AND KHALIDA FAYAZ, 12 Barone Drive, Coram, NY 11727,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. _____ |

## COMPLAINT

General Nutrition Corporation (herein, "GNC"), by and through its undersigned counsel, files the following Complaint seeking injunctive relief and monetary damages, stating as follows:

### I.   INTRODUCTION

1.    This case involves egregious acts on the part of the Defendants involving fraud and conduct which threatens the foundation of GNC's franchise system. That system is based on the agreement of GNC and its hundreds of franchisees to operate retail stores in geographically protected locations. Franchisees are prohibited from wholesaling, selling over the internet and other forms of sales outside the retail franchise store. That is because such actions improperly competes with GNC, deprive GNC and all its franchisees of customers that would purchase product at retail, and creates a potential health and safety risk to the ultimate consumer because GNC has no control over the resellers to whom Defendants are selling product at wholesale.

The Defendants have violated their contractual agreement and duty by selling large amounts of product at wholesale and/or through other means, thereby infringing GNC's business model, diluting its goodwill, depriving GNC of royalty payments that will be hard to calculate and depriving GNC and other franchisees of an unknown number of potential customers.

2.      The actions of Defendants breach their applicable franchise agreements, and materially impairs the goodwill associated with GNC's business, trade name and trade mark.

3.      As a result of the foregoing conduct, GNC terminated the applicable franchise agreements effective August 15, 2017.  It has filed this action because Defendants have failed or refused to turn over ownership and control of their stores, thereby infringing GNC's rights, goodwill, and trademarks and service marks.

## II.      **THE PARTIES**

4.      GNC is a corporation organized under the law of the Commonwealth of Pennsylvania.  Its principal place of business is located at 300 Sixth Street, Pittsburgh, Pennsylvania 15222.

5.      Defendants Choudhry S. Javaid and Gulmeena Javaid (the "Javaids" or "Javaid Defendants") are residents and citizens of the State of New York with a primary residential address of 4 Sullivan Avenue, Port Jefferson, NY  11776.

6.      Defendants Kelly Wong and Hong Bin Guan (the "Wongs" or the "Wong Defendants") are residents and citizens of the State of New York with a primary residential address of 93 Miller Boulevard, Syosset, NY 11791.

7.      Defendants Fayaz Ahmad and Khalida Fayaz (the "Fayaz's or the "Fayaz Defendants) are residents and citizens of the State of New York with a primary residential address of 12 Barone Drive, Coram, NY  11727.

### III.   JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction of the claims herein pursuant to 28 U.S.C. §1331, as one or more of the causes of action arise under the laws of the United States, and 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of seventy-five thousand dollars ($75,000.00).

9.      Defendants are subject to the personal jurisdiction of this Court pursuant to a forum selection clause agreed to by Defendants in the Franchise Agreements they signed forming the basis of this action and because Defendants have regularly transacted business relating to this action in Pennsylvania.

10.     Venue is also proper in this Court pursuant to 28 U.S.C. §1391 because the Franchise Agreements which have been breached were signed by GNC in Pittsburgh, the harm to GNC is substantially focused on GNC's principal place of business, and the Franchise Agreement contains a forum selection clause in which the parties specifically agreed that any action brought by GNC against Defendants shall be brought in federal or state court within the Commonwealth of Pennsylvania in the judicial district in which GNC has its principal place of business.

### IV.   FACTUAL HISTORY

**GNC Has Invested Substantial Resources to Develop Its Business and Reputation**

11.     GNC and its predecessors have been in business since 1935.

12.     GNC operates corporately owned retail stores and franchises which sell, among other items, vitamin and mineral supplements, sports nutrition products, herbs, health foods, natural cosmetics, diet products as well as general wellness products.

LEGAL\32103520\4

13.   In the decades it has been in business, GNC has invested substantial sums of money and resources to develop its brand and stores so that customers will not only recognize the GNC trade name and trade mark, but will know that all products sold meet certain standards of quality and freshness.  This is what is referred to in the applicable franchise agreements as the "GNC System."

14.   GNC manufactures many of the products it sells, while also contracting with various suppliers for the remainder of its products.  GNC has invested substantial sums of money and resources in its manufacturing and supply operations to ensure that all products manufactured or supplied meet certain standards of quality and freshness.

15.   GNC also invests substantial sums of money and resources each year in its goodwill and the GNC System through (a) marketing and advertising support, (b) operational support, (c) auditing of stores so that they meet minimum standards regarding how each store is laid out and the quality and freshness of the products, (d) training its franchisees and managers so that everyone understands what is expected or required; and (e) reviewing and updating, as appropriate, policies and procedures relating to, among other things, the quality of products and when products can be sold.

16.   GNC could not operate a franchise business if its franchisees were not able to make a profit.

17.   The more franchisees that sell GNC product, the greater will be GNC's market penetration which, in turn, enhances its goodwill.

18.   Implementing a franchise system which enables the franchisees to make a profit is essential to GNC's success and goodwill.

19.   Another part of the "GNC System," which protects all of GNC franchisees, as well as GNC's success and goodwill, is to require all franchisees to operate with and conform to the same business model.

4

20.     One key part of GNC's business model is to restrict each franchisee from selling

product outside of the franchisee's store.  In this regard, each franchisee is required to sign a

franchise agreement which provides, in part, as follows:

> 2B.     Direct Marketing Restriction.  Franchisee may solicit and sell to any customers at
> the Approved Location, provided, however, that Franchisee acknowledges that the
> license granted herein is limited to the operation of a retail GNC Store for sales only at
> the Approved Location. Franchisee shall not operate a mail order, direct mail, catalog,
> telemarketing, wholesale, exporting, distribution, direct sales, direct marketing or similar
> business, including through the use of the Internet, which permits customers to purchase
> and receive products or services without being present at the Approved Location. ... For
> purposes of this Agreement, "wholesale business" or "wholesaling" shall mean when the
> Franchisee sells, transfers or conveys, or transacts to sell, transfer or convey, Products to
> any person or entity that it knows, should know or has reason to suspect will resell such
> Products....

21.     GNC further protects its success and goodwill by including a provision in the

franchise agreement entitled, "GNC System," which in Section 11A provides, in pertinent part,

as follows: "General.  Franchisee acknowledges that franchising is a method of selling goods or

services in a consistent manner and that store customers expect a similar shopping experience at

a franchised business, regardless of its location or operator.  Franchisee recognizes the

importance of these concepts and agrees to participate in and comply with the requirements of

the GNC System, which promotes a uniform method of operating a retail nutrition, health and/or

fitness store."

22.     In other words, the "GNC System" is built on driving customers to the retail

stores and ensuring that each retail location presents a uniform image.

23.     Despite the oversight and support provided by GNC, franchisees operate

independently.  Therefore, it is essential to the GNC System for franchisees to operate in a loyal

and trustworthy manner.

24.     To ensure that its franchisees not only operate within the standards set by GNC,

but also help develop and protect GNC's goodwill, GNC has developed a Franchise Operations

Manual ("FOM"), which provides detailed guidance to franchise owners regarding all facets of

their franchise stores, including what products can be sold and when.

25.   Among other provisions, the FOM requires franchise operators ("franchisees") to "compete ethically in the marketplace" and "comply with applicable laws," including but not limited to requirements of the U.S. Food and Drug Administration, and prohibits any "form of misrepresentation made in connection with sales."

26.   GNC's success is directly tied to the financial investment and countless hours it has put in to developing the goodwill in its trade name and trademarks, and to franchisees following the policies and procedures that have been developed to ensure products are safe and sold within the dates specified.

### The Defendants are Experienced, Sophisticated Franchisees

27.   The Javaids purchased their first franchise on or about January 26, 2010, with the Fayaz Defendants, to operate a GNC store located at Deer Park Commons, 520 Commack Drive, Deer Park, New York ("GNC Store No. 2032").

28.   Based on the Javaids' success in operating that franchise, they entered into their second agreement on or about October 19, 2012, to operate a GNC store located at The Center at Centereach, 1950 Middle Country Road, Centereach, NY ("GNC Store No. 3624").

29.   On or about November 17, 2014, the Javaids sold a minority interest in Store 3624 to the Wong Defendants.

30.   On or about November 3, 2015, GNC and the Javaid Defendants entered into a Franchise Agreement for Defendants to operate a GNC store located at Lakeshore Plaza, 4137 Mountain Road, Pasadena, MD ("GNC Store No. 7471").

31.   Once again, based on their knowledge and expertise in operating GNC franchises, and the success of those stores, the Javaids applied to purchase a fourth franchise, which GNC agreed to on or about March 7, 2016, when the parties entered into a Franchise Agreement for the Javaid Defendants to operate a GNC store located at Hackensack Plaza, 450

6

Hackensack Avenue, Hackensack, NJ ("GNC Store No. 7088").

32.     On or about March 11, 2016, GNC and the Javaid Defendants entered into a Franchise Agreement for the Javaids to operate a GNC store located at River Hill Village Center, 6040 Daybreak Center, 6040 Daybreak Circle, Clarksville, MD ("GNC Store No. 2120").

33.     On or about August 14, 2016, GNC and the Javaid Defendants entered into a Franchise Agreement for the Javaid Defendants to operate a GNC store located at Merritt Manor Shopping Center, 1141 Merritt Boulevard, Dundalk, MD ("GNC Store No. 9132").

34.     Finally, on or about November 18, 2016, based on their long involvement with GNC, and their knowledge and expertise in operating GNC franchises the Javaids entered into a Franchise Agreement for them to operate a GNC Store located at Tanger Outlets at the Arches, 455 Commack Road, Deer Park, NY  ("GNC Store No. 6152").

35.     Based upon their many years of operating GNC stores, the defendants are sophisticated franchisees who are intimately familiar with the requirements and expectations for operating a GNC store.

36.     GNC substantially contributed to the foregoing success through, among other things, the GNC System and the training it provided.

37.     GNC also provided substantial financial support to the Javaids, which included loans from GNC and a $1,180,350.00 loan from Bank of America which GNC guaranteed.

38.     Each GNC franchise is governed by valid and enforceable Franchise Agreements that are supported by adequate consideration.

39.     The Franchise Agreements provide that they shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania.

7

## Relevant Provisions of the Seven (7) Franchise Agreements

40.    Defendants' Franchise Agreements provide, in pertinent part, as follows:

a.    2B.    Direct Marketing Restriction.  Franchisee may solicit and sell to any customers at the Approved Location, provided, however, that Franchisee acknowledges that the license granted herein is limited to the operation of a retail GNC Store for sales only at the Approved Location.  Franchisee shall not operate a mail order, direct mail, catalog, telemarketing, wholesale, exporting, distribution, direct sales, direct marketing or similar business, including through the use of the Internet, including through eBay or social media and social networking sites such as Twitter and Facebook, which permits customers to purchase and receive products or services without being present at the Approved Location.… For purposes of this Agreement, "wholesale business" or "wholesaling" shall mean when the Franchisee sells, transfers or conveys, or transacts to sell, transfer or convey, Products to any person or entity that it knows, should know or has reason to suspect will resell such Products.…

b.    3D.    Rights Upon Expiration or Termination.  Franchisee shall have no right to operate the Franchised Business or to use the System or the Proprietary Marks under this Agreement after the expiration of the Franchise Term or following any termination of this Agreement prior to the expiration of the Franchise Term.

c.    4C.    Royalty Fee.  Franchisee shall pay to Franchisor a continuing monthly Royalty Fee in the amount specified in the Selected Term Summary in the manner provided in Section 4.H. below.

d.    6D.    Protected Territory.  Subject to Franchisor's Retained Rights and to Franchisor's rights under Section 18.A., Franchisor shall not itself operate, nor grant a franchise for the operation of, another GNC Store, within the Protected Territory during the Protective Period.

e.    11A.    General.  Franchisee acknowledges that franchising is a method of selling goods or services in a consistent manner and that store customers expect a similar shopping experience at a franchised business, regardless of its location or operator.  Franchisee recognizes the importance of these concepts and agrees to participate in and comply with the requirements of the GNC System, which promotes a uniform method of operating a retail nutrition, health and/or fitness store.

f.    12H.    Compliance with Manuals.  Franchisee shall operate the Store in strict conformity with such policies, procedures, methods, standards, and specifications as Franchisor may from time to time prescribe in the Manuals or otherwise in writing."

g.    12.I.    Products, Equipment and Supplies.  Franchisee agrees:

8

        (i)     …..to not wholesale, directly or indirectly, any items at the Store or otherwise…

h.    12K.   Ethical Conduct.  Franchisee shall in all aspects of Store operations and in dealings with customers, suppliers, landlords, Franchisor and its Affiliates, other franchisees and the general public act in a professional manner and adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct. Franchisee agrees to refrain from any conduct, business or advertising practice which may be injurious or prejudicial to the business of Franchisor, the System, and the good will associated with the GNC Brand Supplements, the proprietary Marks, and other GNC stores.

i.    12L.   Employees.  Franchisee shall take such steps as are necessary to ensure that its employees preserve good customer relations, comply with the requirements and specifications set forth in this Agreement or prescribed in the Manuals or otherwise in writing, and comply with such dress code as Franchisor may prescribe, including, but not limited to, wearing GNC specified uniforms in a clean and neat condition and use of name tags at all times while working in the Store.

j.    12M.   Compliance with Laws.  Franchise acknowledges and understands that Franchisee's storage, offer, and sale of certain products shall be subject to specific federal, state, and local laws and regulations, including rules and regulations of the Food and Drug Administration ("FDA"), the Consumer Product Safety Commission ("CPSC"), and the Federal Trade Commission ("FTC").

k.    15.   Confidential Operating Manual.  Franchise shall conduct its business in strict accordance with the Manuals, one (1) copy of which shall be furnished or otherwise made available electronically to Franchisee on loan for the term of this Agreement.

l.    20B.   Termination by Franchisor on Notice without Opportunity to Cure.  Upon the occurrence of any of the following events, Franchisee shall be in default hereunder, the Franchisor may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon receipt of notice by Franchisee:

        (vi)   If Franchisee or any of its Principals, as applicable, fails to comply with the covenants in Section 22.A, 22.B and 22.C …;

        (vii)   If Franchisee, or any of its Principals, employees, agents or representatives, has made any material misrepresentations, or has provided any false, misleading, inaccurate or incomplete information, whether written or oral, … in connection with the operation of the Franchised Business pursuant to this Agreement….;

9

(viii)   If Franchisee, or any of its employees, agents or representatives engage in fraudulent conduct, including knowingly maintaining false books or records, submitting or making any false reports or statements to Franchisor, or attempting to adjust the POS System or manipulate data input thereon to decrease Franchisee's royalty obligation, cause issuance of credits to Franchisee to which it is not entitled, or otherwise cause data presented not to be true and correct; or if Franchisee, or any of its employees, agents or representatives, denies Franchisor's authorized representatives immediate access to the Store or to Franchisee's books and records for the purposes of an audit or inspection;

(x)      If Franchisee is in default under Section 20.C. hereof for failure to comply with any requirements imposed by this Agreement more than once;

(xiv)    If Franchisee… engages in any activity which is likely to be directly or indirectly injurious or prejudicial to the goodwill associate with the Proprietary Marks;

m.   21B.   <u>Cessation of Franchised Business and Disassociation.</u>  Franchisee shall immediately cease to operate the Franchised Business and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor.

n.   21F.   <u>Payment to Franchisor and Affiliates.</u>  Franchisee shall promptly pay all sums owing to Franchisor and its Affiliates, together with any advertising and promotional funds, including interest on overdue monies as described in Section 4.G.  In the event of termination for any default of Franchisee, such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the default, which obligation shall give rise to and remain, until paid in full, a lien in favor of Franchisor against any and all of the personal property, equipment, inventory, and fixtures owned by Franchisee and on all premises operated hereunder at the time of default.

o.   21G.   <u>Attorneys' Fees and Court Costs.</u>  Franchisee shall pay to Franchisor all damages, costs and expenses, including reasonable attorneys' fees and court costs, incurred by Franchisor subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 21.

p.   21M.   <u>Cross-Termination upon Termination of this Agreement.</u>  In the event of the termination of this Agreement by Franchisor under Section 20 hereof, Franchisor shall be entitled, at its option, to terminate all Related Agreements (as defined in Attachment B) immediately on written notice to Franchisee.  This means that Franchisor may, at its option, immediately terminate, upon notice and without opportunity to cure, all other agreements between (i) Franchisor (or its Affiliates) and (ii) Franchisee, its Affiliates or any Entity in which Franchisee or any Principal, manager, partner or joint venture of Franchisee, directly or

LEGAL\32103520\4

indirectly, has any interest of ownership or participation. Franchisee acknowledges that this provision may result in the termination of one or more other Related Agreements that relate to the Franchised Business. Franchisee further acknowledges that this provision may result in the termination of one or more other franchise agreements for other GNC Stores and any agreements related to those other GNC Stores, regardless of location.

q.      **22A    Business Protective Covenants Applicable During Franchise Term.** During the term of this Agreement, except as otherwise approved in writing by Franchisor, Franchisee shall not, directly or indirectly, for itself, or through, on behalf of, or in conjunction with any other person or Entity: (i) divert or attempt to divert any business or customer of the Franchised Business to any Competitive Business, by direct or indirect inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the GNC System;

r.      **29A.    Governing Law.** This Agreement has been entered into and shall be governed by, and construed, interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania, which laws shall prevail in the event of any conflict of law; provided, however, that if any provision of this Agreement would not be enforceable under the laws of Pennsylvania, and if the Franchised Business is located outside of Pennsylvania, and further, if such provision would be enforceable under the laws of the state in which the Franchised Business is located, then such provision shall be interpreted and construed under the laws of that state. Nothing in this choice of law provision is intended to make applicable any state franchise law that would otherwise not be applicable.

s.      **29D.    Forum Selection; Venue.** …If Franchisor brings an action or other proceeding against Franchisee in any state or federal court located within the Commonwealth of Pennsylvania in the judicial district in which the Franchisor has its principal place of business, Franchisee accepts generally and unconditionally the *in personam* jurisdiction and venue of the aforesaid courts and waives any defense of *forum non conveniens*.

t.      **29H.    Attorney's Fees and Costs.** In any litigation … relating to or in connection with the Franchised Business, this Agreement or the relationship between the parties, to the extent the Franchisor is the prevailing party, Franchisor shall be entitled to recover its reasonable costs and expenses, including attorneys' fees, paralegal fees, investigative costs, and court cost incurred in connection therewith….

41.     GNC leases each of the sites for the GNC Stores formerly franchised to

Defendants from the respective shopping centers. In connection with each of the Franchise

Agreements, Defendants entered into a separate sublease with GNC for the store sites where

11

under Defendants became obligated to GNC to pay rent relating to each store.

42.     As set forth above, Section 21M of the Franchise Agreement provides that, in the event that the Franchise Agreement for any store is terminated, GNC shall have the right, upon written notice, to immediately terminate all other agreements between GNC and the franchisee.

### The Defendants Have Materially Breached the Franchise Agreements and Impaired GNC's Goodwill

43.     The Defendants, and each of them, have engaged in a pattern of misconduct which has breached their franchise agreements and substantially impaired and will continue to impair GNC's goodwill if they are allowed to continue to operate their franchises.

44.     On January 4, 2013, GNC sent Notice of Termination to the Javaid Defendants and Fayaz Defendants alleging that they were engaged in the wholesaling of products. A true and correct copy of the Notice is attached hereto as Exhibit 1.

45.     On December 20, 2016, GNC sent Notice of Termination to Store 7088, and to the Javaids' home, alleging that the Javaids were again engaging in the wholesaling of products, and gave the Javaids an opportunity to cure. A true and correct copy of the Notice is attached hereto as Exhibit 2.

46.     On December 20, 2016, GNC sent Notice of Termination to Store 3624, and to the homes of the Javaids and Wongs, alleging that the Javaids and Wongs were engaged in the wholesaling of products, and gave them an opportunity to cure. A true and correct copy of the Notice is attached hereto as Exhibit 3.

47.     The Javaid and Wong Defendants responded to the foregoing notices of termination in writing on January 17, 2017 by giving the exact same responses denying the allegations, while also stating that they would "ensure that the products are not sold to the

12

wholesale seller or the internet seller and we will fully comply with the Franchise Agreement. True and correct copies of which are attached as Exhibits 4 and 5, respectively.

48.     As set forth in their responses, Defendants denied engaging in wholesaling, and instead argued that they were (a) clearing out the entire product line at issue, (b) had to sell at discount because their stores are in locations where foot traffic was low, and (c) were selling up to four products at a time to address competition.

49.     Since Defendants' responses, from January 2017, GNC has discovered that Defendants' stores have frequently sold up to one hundred containers of the same product during a single transaction or a series of transactions within a matter of minutes.

50.     Because the products have expiration dates, it is inconceivable that one retail customer would purchase so many products at one time.

51.     Many times, the products were purchased either in cash or using the Javaids' credit card.

52.     When product is sold at whole sale, GNC loses all control over how the product is sold or used, creating a potential health and safety issue for consumers, GNC and its franchisees.

53.     When product is sold at wholesale, GNC suffers monetary damages because the amount it collects in royalties is reduced.

54.     Wholesaling also damages GNC's goodwill because customers that would otherwise go a GNC store to buy product now can buy product cheaper on the internet or through other means, diminishing the value of the GNC system and damaging its goodwill.

55.     Under GNC's Franchise Agreement and FOM, once a product expires, it can no longer be sold and the franchisee takes the loss.

56.     GNC has discovered that the Javaid Defendants, either directly or through their employee, have purchased hundreds if not thousands of dollars of product for themselves at or near their expiration date, or then took that product to stores operated by GNC or different franchisees where they returned the product and received a full refund.

57.     Upon information and belief, the foregoing scheme represents a fraudulent effort on the part of the Javaids to avoid the requirements of the FOM, which actions constitute a violation of the Franchise Agreement.

58.     On August 14, 2017, GNC store 7088 was terminated based on the Javaids' violations of the Franchise Agreements as set forth above. A true and correct copy of the notice of termination is attached hereto as Exhibit 6.

59.     Based on the termination of Store 7088, effective August 14, 2017, GNC exercised its contractual right set forth in Section 21M of the Franchise Agreement, to terminate the remaining Franchise Agreements between GNC and the Javaids. A true and correct copy of the Notice of Termination is attached hereto as Exhibit 7.

60.     GNC store 2032 was terminated as a result of the Javaids' and Fayaz's continued violations of the Franchise Agreements as set forth above. A true and correct copy of the Notice of Termination is attached hereto as Exhibit 8.

61.     GNC store 3624 was terminated as a result of the Javaids' and Wongs' continued violations of the Franchise Agreements as set forth above. A true and correct copy of the Notice of Termination is attached hereto as Exhibit 9.

62.     Defendants individual and/or collectively owe hundreds of thousands of dollars.

63.     The Franchise Agreements require Defendants to pay all amounts due and owing upon termination, which they have not. Defendant also agreed in the Franchise

LEGAL\32103520\4

Agreements to pay all costs and expenses, including reasonable attorney's fees, incurred by GNC in relation to the enforcement of the Franchise Agreements.

64.      In connection with the GNC Stores and as an inducement for GNC to enter into the agreements, Defendants executed a document for each Franchise Agreement entitled "Guarantee" whereby Defendants agreed to be individually bound by all the terms and conditions of the Franchise Agreements and unconditionally guaranteed that all obligations to GNC under the Franchise Agreements (as well as any other agreement between GNC and Defendants would be punctually paid and performed. A copy of each Guarantee is attached to the Franchise Agreements.

## COUNT I

## BREACH OF CONTRACT AGAINST THE JAVAIDS

65.      GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.      Defendants have failed and refused to meet their contractual obligations in a number of areas, including, but not limited to violating the law, failing to comply with the Franchise Agreement, GNC rules and regulations, live up to important covenants, take adequate steps to protect GNC customers and the GNC brand, to make payments when due under the Franchise Agreements, Subleases, Product Sales Agreements, and Guarantee despite GNC's demand for such payments, and has thereby breached each of these contracts.

67.      As a direct result of Defendants' material breaches, GNC has sustained actual and consequential damages that will be established at trial.

## COUNT II

## BREACH OF CONTRACT AGAINST JAVAIDSAND FAYAZS

68.    GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Defendants have failed and refused to meet their contractual obligations in a number of areas, including, but not limited to violating the law, failing to comply with the Franchise Agreement, GNC rules and regulations, live up to important covenants, take adequate steps to protect GNC customers and the GNC brand, to make payments when due under the aforementioned Franchise Agreements, Subleases, Product Sales Agreements, and Guarantee despite GNC's demand for such payments, and has thereby breached each of these contracts.

70.    As a direct result of Defendants' material breaches, GNC has sustained actual and consequential damages that will be established at trial.

## COUNT III

## BREACH OF CONTRACT AGAINST THE JAVAIDS AND WONG/GUAN

71.    GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    Defendants have failed and refused to meet their contractual obligations in a number of areas, including, but not limited to, violating the law, failing to comply with the Franchise Agreement and GNC rules and regulations, live up to important covenants, to take adequate steps to protect GNC customers and the GNC brand, to make payments when due under the aforementioned Franchise Agreements, Subleases, Product Sales Agreements, and Guarantee despite GNC's demand for such payments, and has thereby breached each of these contracts.

73.    As a direct result of Defendants' material breaches, GNC has sustained actual and consequential damages that will be established at trial.

16

## COUNT IV

### FRAUD AGAINST THE JAVAIDS

74.     GNC hereby incorporates by reference the allegations set forth in the prior paragraphs of this Complaint as if fully set forth herein.

75.     The Javaid Defendants knowingly made false statements by paying royalties on sales which they represented to be retail sales, and by returning product which they represented had been purchased at retail.

76.     The statements were made for the purpose of deceiving and misleading GNC.

77.     GNC relied to its detriment on the false representations.

78.     As a direct result of the Javaid Defendants' misrepresentations GNC has sustained actual and consequential damages that will be established at trial.

## COUNT V

### TRADEMARK INFRINGEMENT, 15 U.S.C. §§ 1114 AND 1125(a)

77.     GNC hereby incorporates by reference the allegations set forth in the prior paragraphs of this Complaint as though fully set forth herein.

78.     GNC is the owner of the valid and legally protectable Proprietary Marks identified in the Franchise Agreements, including, *inter alia*, GNC®, and GENERAL NUTRITION CENTER®. Each of these marks has been federally registered and is incontestable.

79.     Defendant Franchisees' infringement of GNC's Proprietary Marks is designed to cause, and will likely cause, customer confusion with GNC as the Defendant Franchisees did not have the right to use the Proprietary Marks following the termination of the Franchise Agreement. Such potential customer confusion constitutes irreparable harm.

80.     Defendants aforesaid conduct is in violation of trade mark protections of 15 U.S.C. §§ 1114 and 1125(a), and at all relevant times is and has been willful, malicious and in conscious disregard of GNC's rights under the Lanham Act.

81.     As a result of Defendant Franchisees' conduct in violation of the Lanham Act, GNC has suffered and will continue to suffer irreparable injury that cannot be adequately compensated by money damages, and which gives rise to injunctive relief of the type sought herein pursuant to 15 U.S.C. § 1116.

82.     As a result of Defendant Franchisees' conduct in violation of the Lanham Act, GNC has sustained actual and consequential damages that will be established at trial.

## COUNT VI
## VIOLATION OF THE LANHAM ACT, 15 U.S.C. §1125(c)-TARNISHMENT

83.     GNC hereby incorporates by reference the allegations set forth in the prior paragraphs of this Complaint as though fully set forth herein.

84.     The GNC Proprietary Marks are famous and are held in high esteem by consumers of GNC products.

85.     Defendant Franchisees' are making unlawful use of the Proprietary Marks in interstate commerce and the unlawful use did not begin until after the proprietary Marks had become famous, well-recognized and held in high esteem by GNC's customers.

86.     Defendant Franchisees' unlawful use of the proprietary Marks has tarnished and disparaged the Proprietary Marks and resulted in a loss of the ability of the Proprietary Marks to serve as unique identifiers of GNC's products.

87.     Defendant Franchisees' aforesaid conduct is in violation of 15 U.S.C. §1125(c), and at all relevant times is and has been willful, malicious, and in conscious disregard of GNC's rights under 15 U.S.C. §1125 (c).

18

88.     As a result of Defendant Franchisees' conduct in violation of 15 U.S.C. §1125(c), GNC has suffered and will continue to suffer irreparable harm that cannot adequately be compensated solely by monetary damages, and which gives rise to injunctive relief of the type sought herein and pursuant to 15 U.S.C.§1116.

89.     As a result of Defendant Franchisees' conduct in violation of 15 U.S.C. §1125(c), GNC has sustained actual and consequential damages which will be established at trial.

### COUNT VII
### BREACH OF GUARANTEE

90.     Under the terms of the Franchise Agreement, Defendant Franchisees are obligated to comply with all federal, state and local laws.

91.     As described above, Defendant Franchisees have violated the Lanham Act, and, therefore, Defendants have thereby breached the Agreement and are jointly and severally liable for violation of the Lanham Act and any damage award rendered against Defendant Franchisees' for violations of the Lanham Act.

LEGAL\321035204

## PRAYER FOR RELIEF

WHEREFORE, GNC demands judgment in its favor and against Defendants as follows:

(i)      That the Court issue an injunction enjoining Defendants, their agents, servants, employees, officers, directors, attorneys, partners, partnerships, and representatives, as well as those persons in concert or participation with any of them, from using the Proprietary Marks, confidential methods, systems and techniques associated with GNC's System; continuing to use other Proprietary Marks associated with GNC's System; and/or continuing to use signs, advertising materials, displays, and other proprietary information, including, all advertisements, promotional materials, computer programs, publications, distributions, copies, items of clothing, and/or any other printed or reproduced material which bear any of GNC's marks, including all of GNC's logos, designs, slogans, and distinctive color combinations;

(ii)     That the Court issue an injunction compelling Defendants, their agents, servants, employees, officers, directors, attorneys, partners, partnerships, and representatives, as well as those persons in concert or participation with them to:

      (a)     Immediately cease operating the nine GNC Stores franchised under the Franchise Agreements;

      (b)     Take the necessary steps to honor each and every post-termination obligation set forth in the Franchise Agreement;

      (c)     Take the necessary steps to honor GNC's right to reenter the lease premises; and

      (d)     Return all manuals and other confidential operating material provided to Defendants in connection with the operation of the store governed by the Franchise Agreements.

(iii)    That the Court order Defendants to account for all gains, profits, and advantages which have accrued to them, for their benefit, and/or which inured in any manner to them as a

LEGAL\32103520\4

result of the wrongful acts of including but not limited to trademark infringement, dilution and tarnishment in violation of the Lanham Act, 15 U.S.C. §§1051 et. Seq., whichever is greater;

(iv)    That the Court award GNC compensatory, liquidated, and consequential damages as a result of Defendants breaches of the Franchise Agreements, Subleases, and Product Sales Agreements in an amount in excess of $75,000, plus interest, costs, and attorney fees;

(v)    That the Court award GNC all fees and costs incurred in this action, including all reasonable attorney's fees, pursuant to the terms and conditions of the Franchise Agreements;

(vi)    That the Court enter judgment against Defendants for prejudgment interest;

(vii)    That the Court award such other relief as this Court shall deem just and equitable under the circumstances.

Dated: August 15, 2017                    Respectfully submitted,

/s/ Peter J. Ennis
Peter J. Ennis, Esq.
PA ID No.:45754
pennis@cozen.com
Cozen O'Connor
One Oxford Centre, 26th Floor
Pittsburgh, PA 15219
(412) 620-6512
(412) 275-2351 (Fax)

General Nutrition Corporation
Gary R. Kelly,
PA ID No. 59027
Gary-kelly@gnc-hq.com
300 Sixth Avenue
Pittsburgh PA 15222
(412) 288-4621 (phone)
(412) 338-8900 (Fax)

LEGAL\32103520\4