IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GENERAL NUTRITION CORPORATION**, | ) CIVIL ACTION NO. 17-1074 |
| Plaintiff, | ) |
| v. | ) |
| **CHOUDHRY S. JAVAID** *AND* **GULMEENA JAVAID; KELLY WONG** *AND* **HONG BIN GUAN; AHMAD FAYAZ** *AND* **KHALIDA FAYAZ,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Conti, Chief District Judge.

This case involves a franchise dispute. Defendants owned seven General Nutrition Corporation ("GNC") franchises in New York, New Jersey and Maryland. GNC terminated the franchise agreements on August 17, 2017, alleging a pattern of wholesaling behavior and false purchases or returns of products close to their expiration date. Defendants returned the keys to three stores, but refused as to the other four stores, which they continue to operate. GNC initiated this lawsuit, alleging breach of the franchise agreement, fraud, trademark infringement, tarnishment of GNC's proprietary marks under the Lanham Act, and breach of guarantee.

Defendants filed an answer and five-count counterclaim against GNC alleging: (1) breach of contract; (2) breach of the Sherman Antitrust Act; (3) violation of Maryland Commercial Law §11-204, a parallel Maryland antitrust law; (4) declaratory judgment; and (5) injunctive relief. (ECF No. 70). Defendants' antitrust theory is that GNC is using its allegations of "wholesaling" as a pretext to prevent franchisees from selling product at discounts GNC considers too steep (i.e., GNC is attempting to dictate minimum prices).

GNC filed a partial motion to dismiss the antitrust claims in counts 2 and 3 of the counterclaim. GNC argues: (1) Defendants lack standing to allege antitrust harm; and (2) Defendants failed to plead facts of a conspiracy to establish minimum pricing.

The general principles of law governing antitrust claims are well known.

> Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. An antitrust plaintiff must plead the following two elements: (1) "that the defendant was a party to a contract, combination ... or conspiracy" and (2) "that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Ins. Brokerage*, 618 F.3d at 315 (citation and internal quotation marks omitted).
>
> The first element—a contract, combination, or conspiracy—requires "'some form of concerted action,'" which we define as "'unity of purpose or a common design and understanding or a meeting of minds' or 'a conscious commitment to a common scheme.'" *Id.* (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir. 1999); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004)). In other words, Section 1 claims always require "the existence of an agreement." *Id.* (citations and internal quotation marks omitted); *see also Howard Hess*, 602 F.3d at 254 ("Section 1 claims are limited to combinations, contracts, and conspiracies and thus always require the existence of an agreement."); *West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010) ("To prevail on a section 1 claim ... a plaintiff must establish the existence of an agreement."). Unilateral action, regardless of the motivation, is not a violation of Section 1. *Ins. Brokerage*, 618 F.3d at 321.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

To establish standing to assert an antitrust claim, a plaintiff "must show an injury to them resulting from the illegal conduct." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A franchisee has standing to allege an antitrust claim even if the franchisee signed the contract. As explained in *Perma Life Mufflers, Inc. v. International Parts Corporation*:

> [W]e held in *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), that a plaintiff in an antitrust suit could not be barred from recovery by proof that he had engaged in an unrelated conspiracy to

2

> commit some other antitrust violation. Similarly, in *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), we held that a dealer whose consignment agreement was canceled for failure to adhere to a fixed resale price could bring suit under the antitrust laws even though by signing the agreement he had to that extent become a participant in the illegal, competition-destroying scheme. Both *Simpson* and *Kiefer-Stewart* were premised on a recognition that the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.

392 U.S. 134, 138–39 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).

The "contract, combination or conspiracy" prong may be satisfied by the existence of a franchisor-franchisee contract. In *Continental TV, Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 40 (1977), the Supreme Court recognized an antitrust claim brought by a franchisee alleging that the franchisor was enforcing franchise agreements that prohibited the sale of Sylvania products other than from specified locations. The franchisor, Sylvania, initially contended that its policy was unilaterally enforced, but then conceded that its location restriction involved understandings or agreements with the retailers. *Id.* at n.8.

In the counterclaim, defendants allege that multiple GNC franchise agreements are at issue. Defendants allege that GNC is improperly attempting to control discounted pricing by multiple franchisees because selling products at steep discounts reduces the amount of royalties and advertising fees GNC receives and drives customers to purchase products from franchise stores rather than company stores or the GNC online website. Counterclaim ¶¶ 38-39.

The alleged vertical price fixing scheme is analyzed under the fact-intensive "rule of reason" to determine if there is an unreasonable restraint on trade. *Burtch*, 662 F.3d at 222. At this stage of the case there are sufficient facts pleaded, when viewed in the light most favorable to Defendants, to state a federal antitrust claim under this theory. The same analysis governs the

parallel Maryland state law antitrust claim.  In summary, GNC's partial motion to dismiss counts 2 and 3 (ECF No. 78) will be DENIED.

An appropriate order follows.

February 26, 2018.

<u>/s/ Joy Flowers Conti</u>  
Joy Flowers Conti  
Chief United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GENERAL NUTRITION CORPORATION**, <br><br> Plaintiff, <br><br> v. <br><br> **CHOUDHRY S. JAVAID** *AND* **GULMEENA JAVAID; KELLY WONG** *AND* **HONG BIN GUAN; AHMAD FAYAZ** *AND* **KHALIDA FAYAZ**, <br><br> Defendants. | CIVIL ACTION NO. 17-1074 |

## ORDER OF COURT

AND NOW, this 26th day of February, 2018, IT IS HEREBY ORDERED that for the reasons set forth in the accompanying memorandum opinion, GNC's partial motion to dismiss counts 2 and 3 of the counterclaim (ECF No. 78) is DENIED.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge